UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC | CIVIL ACTION |
| VERSUS | No. 17-7644 |
| CHARLES GIBSON, ET AL. | SECTION: "J"(5) |

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 13)** filed by Plaintiff, SE Property Holdings, LLC, and two oppositions thereto (Rec. Docs. 23, 25) filed by Defendants, Jeffrey Green, Cecile Green, and Charles Gibson. SE Property Holdings, LLC, has also filed a reply (Rec. Doc. 29). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. On November 19, 2007, Jeffrey Green and Cecile Green (the "Greens") purchased a tract of immovable property located in Washington Parish, Louisiana ("Tract A"). In connection with the purchase, the Greens granted First National Bank of Baldwin a properly recorded security interest in Tract A to secure the amounts owed under a promissory note (the "FNBB Mortgage"). Over the next few years, the Greens

purchased three additional tracts of immovable property ("Tract B," "Tract C," and "Tract D") also located in Washington Parish.[1]

On July 13, 2012, the Greens executed a mortgage in favor of Charles Gibson ("Gibson") as to Tracts A, C, and D, which mortgage secured a $200,000 debt owed by the Greens to Gibson (the "Gibson Mortgage"). Upon being filed in the Washington Parish records, the Gibson Mortgage established the second encumbrance on Tract A (inferior to the FNBB mortgage), and the sole encumbrance on Tracts C and D. Tract B, however, remained unencumbered.

On September 27, 2013, Plaintiff, SE Property Holdings, LLC ("SEPH"), obtained a judgment against the Greens in the principal amount of $23,626,922.31 plus interest, reasonable attorneys' fees, and costs. SEPH's judgment was recorded in the property records of Washington Parish on July 15, 2014, thereby perfecting a judicial mortgage against Tracts A, B, C, and D. Consequently, SEPH's judicial mortgage established the third encumbrance on Tract A, the second encumbrance on Tracts C and D, and the sole encumbrance on Tract B. SEPH foreclosed on Tract B in execution of its judgment, and subsequently acquired the property on June 3, 2015.

On April 10, 2015, Gibson acquired the FNBB Mortgage and underlying promissory note by assignment from Tarpon Pool I, LLC.

---

[1] Tracts A-D are contiguous and were collectively utilized by the Greens as a single estate (the "Green Estate").

2

On August 13, 2015, the Greens executed a dation en payment, or giving in payment, in favor of Gibson, which transferred Tracts A, C, and D to Gibson in satisfaction of the FNBB Mortgage and the Gibson Mortgage (the "Mortgages"). The parties recorded the dation in the conveyance and mortgage records of Washington Parish the following day. One week later, on August 20, 2015, Defendants attempted to rescind the dation by executing and filing an "Act of Rescission of Dation en Paiement" (the "Act of Rescission") into the conveyance and mortgage records of Washington Parish.

On August 8, 2017, SEPH filed this lawsuit against Defendants seeking a declaratory judgment that the Mortgages are null and void and without any legal effect. SEPH also seeks injunctive relief as may be necessary to enforce and effectuate its declaratory judgment.

## **PARTIES' ARGUMENTS**

SEPH contends that it is entitled to judgment as a matter of law because the Mortgages were extinguished by confusion as a result of the dation. In addition, SEPH argues that because the obligations were extinguished, Defendants' subsequent Act of Rescission was without any legal effect and failed to revive the Mortgages.

Defendants argue that summary judgment is improper for a host of reasons. First, Defendants argue that the Mortgages were not extinguished by confusion because Gibson had an interest in keeping

3

the titles distinct and separate to ensure that the property actually satisfied the obligations being forgiven by the dation. To this end, Defendants contend that even if the Court determines that the Mortgages are extinguished, Gibson should retain his ranking and priority prior to confusion for the amount owed on the Mortgages. Next, Defendants argue that summary judgment is improper because the prescriptive period for bringing a claim to have the dation declared a relative nullity has not expired. Lastly, Defendants contend that the Act of Rescission successfully dissolved the dation and restored the parties to the situation they were in before the dation was executed.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party

4

cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish

a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. Extinguishment by Confusion

SEPH has the burden of proving that the Mortgages are extinguished. *See* La. Civ. Code. art. 1831 ("A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction."). A dation en paiement, or giving in payment, "is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt." La. Civ. Code art. 2655. An act of giving in payment has the effect of transferring title the same as an ordinary contract of sale. *Quality Fin. Co. of Donaldsonville v. Bourque*, 315 So. 2d 656, 658 (La. 1975). It is well-established that when a creditor receives ownership of property following a dation en paiement, the mortgage held by the creditor on the subject property is extinguished by confusion. *See* La. Civ. Code art. 3319(2) ("A mortgage is extinguished . . . [b]y confusion as a result of the obligee's acquiring ownership of the thing mortgaged."); *see also* La. Civ. Code art. 1903 ("When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion."); *Matter of Dibert, Bancroft & Ross Co., Ltd.*, 117 F.3d 160, 171 (5th Cir. 1997).

6

The dation at issue provides:

> "This transfer and conveyance of the property is made and accepted for an in consideration of the indebtedness represented by the notes referred to above . . . CHARLES SIDNEY GIBSON . . . as the owner of the above-described promissory note does hereby *grant a full and complete release of the mortgage securing payment of the note* and does authorize and direct the Clerk of Court and Recorder of Mortgages of the Parish of Washington, State of Louisiana, to cancel and erase in its entirety from his record the inscription of the mortgage recorded in MOB 953, Page 7, and the mortgage recorded in MOB 805, page 246."

(Rec. Doc. 13-2 at 46). By the express terms of the dation, Gibson received Tracts A, C, and D in satisfaction of his Mortgages (*i.e.*, the FNBB Mortgage and the Gibson Mortgage), which encumbered the aforementioned tracts. Accordingly, the Mortgages were extinguished by confusion at the moment Defendants executed the dation.[2] *See Matter of Dibert, Bancroft & Ross Co., Ltd.*, 117 F.3d at 172 ("[F]or the purposes of confusion, the dation was legally sufficient to consolidate—"confuse"—in the person of the creditor the qualities of both obligee and obligor and thereby extinguish the mortgage."); *see also Hibernia Nat'l Bank v. Continental Marble & Granite Co.,* 615 So. 2d 1109, 1111-12 (La. App. 5 Cir. 1993) (concluding that the execution of a dation en paiement from a mortgagor to a mortgagee extinguished two collateral mortgages

---

[2] *Guste v. Hibernia Nat'l Bank in New Orleans*, 94-0264 (La. App. 4 Cir. 5/16/95); 655 So. 2d 724. (noting that delivery of a thing is necessary to perfect the giving in payment, and that in the case of immovable, delivery is deemed to take place upon the execution of the writing that transfers ownership).

7

under the doctrine of confusion, so as to allow a judicial mortgage filed in the interval between the execution of the dation and its recordation to create a lien on the immovable property that was the subject of the dation).

Nevertheless, Defendants argue that in light of *Martin Lebreton Ins. Agency v. Lamastus,* 357 So. 2d 883 (La. App. 1 Cir. 1978), the dation only extinguishes the Mortgages to the extent that the value of Tracts A, C and D satisfy the debts subject to the dation. Defendants further rely on *Lamastus* to contend that Gibson's rights as a primary creditor may be prejudiced in the absence of an independent determination of the value of the tracts. At issue in *Lamastus* was whether the trial court erred in dismissing an inferior creditor's lawsuit seeking to set aside a dation en paiement to a superior lienholder. *Id.* The defendants in the case, Mr. and Mrs. Lamastus, executed a promissory note for $30,000 secured by a collateral mortgage on their property due to the plaintiff. *Id.* However, before the mortgage was recorded, the defendants made a dation en paiement of the same property to a senior creditor for a stated consideration of $260,000. *Id.* The plaintiff filed suit to set aside the dation en paiement arguing that he was prejudiced by the transaction because the property given in payment was worth more than the value recited in the dation. *Id.* In upholding the validity of the dation, the court reasoned that the plaintiff suffered no prejudice "because

8

the claims of . . . [the creditors senior to the plaintiff] primed that of plaintiff to such an extent that their satisfaction would leave nothing available to apply against its debt." *Id.* at 885.

The Court finds Defendants' reliance on *Lamastus* misplaced. Unlike the case *sub judice*, at issue in *Lamastus* was whether an inferior third party creditor—not the creditor involved in the dation—had been prejudiced as a result of the dation. Here, the third party creditor—SEPH—neither alleges that it has been prejudiced by the dation nor seeks to set aside the dation. In light of this, the Court finds the Defendants' argument regarding prejudice untenable. By its express terms, the dation transferred title to Tracts A, C, and D in satisfaction of the Mortgages which encumbered the tracts. At the time of the transfer, the conveyance and mortgage records of Washington Parish reflected SEPH's judicial mortgage; therefore, Gibson took Tracts A, C, and D subject to SEPH's judicial mortgage. *See Bourque*, 315 So. 2d at 658–59 (La. 1975) ("[The] satisfaction and cancellation of any encumbrance by a giving in payment [does] not have the effect of voiding the obligations owed to other creditors holding recorded conventional mortgages, liens or judicial mortgage which ha[ve] also attached to the property of the debtor."); *see also Calloway v. Taylor*, 286 So. 2d 156, 158 (La. App. 1 Cir. 1973) (concluding that the appellant who received property by way of a dation en paiement took the property subject to a prior recorded judicial

9

mortgage); *Hibernia Nat'l Bank*, 615 So. 2d at 1111-12 (concluding that a creditor who takes property by dation en paiement in satisfaction of debt will acquire the property subject to any encumbrances of other creditors recorded prior to the recordation of the dation en paiement). To the extent Defendants argue that Gibson may be prejudiced by SEPH's encumbrance, it is not for the Court to determine whether Gibson made a wise decision in receiving encumbered property in exchange for the release.

Moreover, Defendants cannot avoid extinguishment on the basis that a claim to have the dation declared relatively null has not yet prescribed. As an initial matter, the mere fact that that Gibson could possibly assert such a claim has no impact on the Court's ability to resolve the instant motion. "An absolutely null contract, or *a relatively null contract that has been declared null by the court*, is deemed never to have existed." La. Civ. Code art. 2033 (emphasis added). Whereas an obligation is not extinguished by confusion as the result of an absolutely null contract, "*[i]f th[e] transaction is only relatively null confusion takes place, however, until the nullity is declared by the court.*" 5 Saul Litvinoff & Ronald J. Scalise, Jr., Louisiana Civil Law Treatise § 20.1 (2d ed. 2017) (emphasis added). Here, it is undisputed that the dation has not been declared relatively null. Further, the Court lacks the authority to declare the dation a relative nullity *sua sponte*. *See* La. Civ. Code art. 2031

("Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative."). In sum, the Court concludes that the Mortgages were extinguished by operation of law once Gibson acquired ownership of the tracts.

II. **Whether the Mortgages Were Revived**

Finally, the Court must determine whether the Act of Rescission was sufficient to revive the Mortgages. The Louisiana Civil Code provides that "a mortgage is extinguished," *inter alia*, "[b]y prescription of all the obligations that the mortgage secures," "[w]hen all the obligations . . . for which the mortgage is established have been incurred and extinguished," and, as is the case here, "[b]y confusion as a result of the obligee's acquiring ownership of the thing mortgaged." La. Civ. Code art. 3319.[3] Whether a mortgage which has been extinguished by confusion

---

[3] A mortgage is extinguished:

    (1) By the extinction or destruction of the thing mortgaged.
    (2) By confusion as a result of the obligee's acquiring ownership of the thing mortgaged.
    (3) By prescription of all the obligations that the mortgage secures.
    (4) By discharge through execution or other judicial proceeding in accordance with the law.
    (5) By consent of the mortgagee.
    (6) By termination of the mortgage in the manner provided by Paragraph D of Article 3298.
    (7) When all the obligations, present and future, for which the mortgage is established have been incurred and extinguished.

La. Civ. Code art. 3319.

can be revived by the subsequent acts of the parties appears to be an open question under Louisiana law.

However, it is well-established that Louisiana law prohibits a mortgage from being revived if the obligation that the mortgage secures has prescribed, or when all the obligations for which the mortgage was established have been incurred and extinguished, notwithstanding certain subsequent acts of the parties. *See Whitney Nat'l Bank v. Demarest*, 947 F.2d 182, 188 (5th Cir. 1991) (concluding that a mortgage that had been extinguished via prescription could not be revived despite a later acknowledgement or renunciation of prescription); *see also Aldridge v. Reed,* 190 So. 845, 847 (La. App. 2 Cir. 1939) ("[W]hen the obligation is extinguished by prescription, the mortgage falls with it; becomes dead, and ... a subsequent acknowledgment of the obligation or waiver of prescription thereon does not revive or reinstate the mortgage."); *State Bank & Tr. Co. of Golden Meadow v. Boat D.J. Griffin*, 755 F. Supp. 1389, 1398 (E.D. La. 1991) ("[W]hen the mortgage is for a specific debt, payment extinguishes debt and mortgage, and the subsequent issue of the note will not revive the mortgage."); *Baton Rouge Wood Products, Inc., v. Ezell*, 194 So. 2d 372, 377 (La. App. 1 Cir. 1966). The Court finds no reason to treat a mortgage which has been extinguished by confusion any differently. As articulated by the Louisiana First Circuit Court of Appeal:

> A mortgage extinguished by operation of express law, however, cannot be revived by its subsequent pledge for a debt of any nature whatsoever. Once the mortgage has ceased to exist by operation of law, it is dead for all purposes and all time. The parties are without power to revive its lifeless remains. Upon extinguishment . . . the mortgage ceases to exist—there is nothing left to . . . deal with in any legal manner.

*Ezell*, 194 So. 2d at 377. Therefore, the Court finds that the Act of Rescission did not have the effect of reviving the Mortgages. Accordingly, the Court concludes that SEPH is entitled to judgment as a matter of law that the Mortgages were extinguished by the dation pursuant to La. Civ. Code art. 3319.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that SEPH's *Motion for Summary Judgment* **(Rec. Doc. 13)** is **GRANTED**.

**IT IS FURTHER ORDERED** that SEPH shall file a proposed judgment not later than June 20, 2018.

New Orleans, Louisiana, this 13th day of June, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE